# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Jerry Smith,                                                    Civil No. 09-2528 (DWF/SRN)

                Plaintiff,

v.                                                              **MEMORANDUM**
                                                                **OPINION AND ORDER**

Local Union No. 110, International
Brotherhood of Electrical Workers,

                Defendant.

---

George L. May, Esq., May & O'Brien, LLP, counsel for Plaintiff.

Brendan D. Cummins, Esq., & Francis P. Rojas, Esq., Miller O'Brien Cummins, PLLP, counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on Plaintiff Jerry Smith's motion to remand (Doc. No. 8) and Defendant's motion to dismiss (Doc. No. 2). For the reasons stated below, this Court denies the remand motion and grants the dismissal motion, although without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Smith is employed by Ideacom Mid-America St. Paul, Inc., which has a contract with Smith's union, Defendant Local Union No. 110, International Brotherhood of Electrical Workers. The contract governs, among other terms of employment, the medical and dental insurance program that Ideacom provides its employees. In 2008 and

again in 2009, Ideacom changed the terms of coverage to the detriment of its employees (for example, by increasing the deductibles under that coverage, by reducing the portion of coverage it would pay after deductibles would be met, and by increasing employees' out-of-pocket annual maximums).

Smith protested to Local 110 that Ideacom was violating the contractual provision requiring Ideacom "to maintain the existing medical and dental health program for the duration of the agreement" and asked the union to grieve the alleged breaches of contract and to arbitrate the grievances. Instead, the union mediated the dispute with the employer, which essentially resulted in the employer largely maintaining the changes in coverage and cost to the employees' detriment.

Smith then filed a Statement of Claim in Minnesota Conciliation Court alleging that due to the "Union's failure to represent" him and the other union members in enforcing the agreement, he has incurred (or would incur) damages in excess of $5,820. (Doc. No. 1, Attachment 1.) The union removed, contending that Smith asserts a federal "fair representation" claim. Smith now moves to remand the entire action back to state court, arguing that his action also involves four additional state-law claims, that federal jurisdiction exists over only the fair representation claim, and that such jurisdiction is concurrent with that of the state. (Doc. Nos. 8 & 14.) Finally, the Union moves under Rule 12(b)(6) to dismiss for failure to state a claim. (Doc. No. 2.)

**DISCUSSION**

Because this action was removed from Minnesota Conciliation Court, which is not subject to the Minnesota Rules of Civil Procedure that would have required a plaintiff to file a complaint that would be comparable to a complaint filed in federal court, there is a temptation of convenience and efficiency to address first the Union's motion to dismiss for failure to state a claim, thereby deferring the jurisdictional analysis required by Smith's motion to remand until an amended complaint could provide a more complete and proper basis from which to determine whether federal jurisdiction exists. But because this Court is one of limited jurisdiction, it is obligated to address the removal and remand issues first and to proceed to the Rule 12(b)(6) motion only if it is satisfied that federal subject matter jurisdiction is present.

**I.      Removal Was Proper And This Court Has Jurisdiction Over The Entire Action**

A defendant may remove "only state-court actions that originally could have been filed in federal court." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *see* 28 U.S.C. § 1441(a), (b). Where, as here, there is no basis for diversity jurisdiction, "federal-question jurisdiction is required. The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Id.*

But under "an 'independent corollary' to the well-pleaded complaint rule, . . . known as the 'complete preemption' doctrine," certain federal statutes contain a

preemption provision that does not simply provide the usual "federal defense" to a state-law claim–which thus would not satisfy the jurisdictional requirement that the federal claim appear on the face of the plaintiff's complaint–but rather converts the state-law claim "'into one stating a federal claim for purposes of the well-pleaded complaint rule'" such that the action is properly removable. *Id.* (internal citation omitted).

**A.**   **Smith's "Fair Representation" Claim Is Federal And Therefore Removable**

The Union removed Smith's action on the ground that the federal courts have original jurisdiction over an employee's claim that a union breached its duty of fair representation. (Doc. No. 1, ¶ 3.) The Union asserted that federal question jurisdiction existed under 29 U.S.C. §§ 141, *et seq.* and *Vaca v. Sipes*, 386 U.S. 171, 190 (1967). (*Id.*)

As noted above, the basis for evaluating the existence of a federal question is confined, of course, to the plaintiff's complaint. By claiming that the Union "fail[ed] to represent" him in the negotiations with his employer, Smith's *de facto* Complaint (his Statement of Claim filed in Minnesota Conciliation Court) plainly alleges a "fair representation" claim.[1] Smith's "fair representation" claim is removable because it arises under federal law. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 83-84 (1989) (explaining that such a claim arises under the NLRA, such that

---

[1]      Smith asserts that the Union mischaracterizes his claim as being based upon his dissatisfaction with the result of the mediation, whereas he contends that his dissatisfaction stems from the Union having chosen "not to seek *any* kind of resolution" of his complaint. (Doc. No. 24, ¶ 4.) But any such distinction is irrelevant for present purposes as either claim would constitute a "fair representation" claim.

federal jurisdiction lies under 28 U.S.C. § 1337(a), granting federal jurisdiction of any civil action "arising under any Act of Congress regulating commerce").

Indeed, Smith concedes as much, noting that of his five purported claims, "[o]nly one, the failure to adequately represent members, is a claim within the purview of this Court's jurisdiction." (Doc. No. 14 at 4.) Smith contends, however, that even if the fair representation claim is federal, jurisdiction is concurrent with that of the states, not exclusively federal. (Doc. No. 8, ¶¶ 2-3; doc. No. 14 at 6-7.) But concurrent jurisdiction provides no basis for remand. *E.g.*, *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998) (concluding that action alleging state-law claims in addition to Section 1983 claim was properly removed "notwithstanding the fact that [federal courts] share [original] jurisdiction with the courts of the state in which they sit").[2] While such a claim could

---

[2]    Smith alleges that *Vaca v. Sipes*, in which the Supreme Court first fully recognized the fair representation claim, "held that a State Court had jurisdiction" and "that jurisdiction of the State Court was not pre-empted." (Doc. No. 14 at 8.) But the fact that a state court has concurrent jurisdiction over a federal claim does not preclude removal or require remand. And while the Court noted that a "primary justification for the pre-emption doctrine . . . is not applicable to cases involving" fair representation claims, the Court was addressing not federal preemption of state law, much less removal under the doctrine of complete preemption, but rather the question of exclusive *agency* jurisdiction–that is, whether the general principle that the National Labor Relations Board has exclusive jurisdiction over many labor disputes was subject to an exception permitting fair representation claims to be brought in state or federal court. 386 U.S. at 173-74. The Court rejected the argument that "the broad pre-emption doctrine defined in *San Diego Bldg. Trades Council v. Garmon*" applied. *Garmon* "recognized that the broad powers conferred by Congress upon the National Labor Relations Board" not only mandated uniform application of federal substantive law but also required exclusive jurisdiction before the NLRB. *Id.* at 178-79. But in *Vaca* the Court ruled that this rule of exclusive agency jurisdiction–what it characterized as a "pre-emption doctrine"–was subject to various exceptions permitting federal courts (and sometimes also state courts) to hear particular disputes. *Id.* at 179-80. The Court did not thereby hold that a defendant

(continued...)

5

have been brought originally in either state or federal court, where a plaintiff files such a

claim in state court the defendant–at its election–may remove it to federal court. *See id.*[3]

Moreover, a federal claim that is properly removed is not subject to remand–that is,

contrary to Smith's contention, this Court has no discretion to then remand to state court a

federal claim simply because original jurisdiction was also proper in state court. *Gaming*

*Corp. Of America v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996).[4]

**B.**     **Smith's Additional Claims Would Not Preclude Removal Or Warrant Remand**

The fact that this case originated not in a Minnesota district court, but rather in

Minnesota Conciliation Court, which is subject to its own rules of simplified pleading,

adds a minor wrinkle to the analysis. The Statement of Claim does not separately

delineate individual claims or causes of action.[5] But any fair reading discloses that

---

[2](...continued)
could not remove a fair representation claim to federal court or that jurisdiction was
otherwise confined to state court at the plaintiff's election.

[3]     In support of his argument that jurisdiction is concurrent, Smith relies on
Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, under
which jurisdiction is indeed concurrent. But a "fair representation" claim is implied from
Section 9 of the FLRA, 29 U.S.C. § 159. *See infra* Section I.B.

[4]     Smith also suggests that "[t]his is not a proper case" for federal court
because the amount in controversy is less than $6,000. (Doc. No. 8.) But there is no
longer any amount-in-controversy requirement for federal question claims, and a
defendant has the right to remove even a small action that satisfies the requirements of
federal question jurisdiction.

[5]     Smith argues that claims filed in Conciliation Court need not be identified
formally as specific counts or specific causes of action because conciliation court rules
and practice do not require–or even permit–such formalities. (*Id.* at 3-4.) The Court does
(continued...)

Smith's claim is premised on his union's handling of his grievance with his employer's changes to the insurance plan–that is, a federal "fair representation" claim.

Nevertheless, he now contends that his allegations also support four additional state-law claims.[6]  Smith contends that his *de facto* Complaint includes not only a claim that the Union failed to adequately represent its members–which Smith concedes is subject to federal jurisdiction–but also state-law claims for "breach of contract, breach of trust, failure to process a grievance pursuant to the Union's labor agreement . . . [and] bad faith."  (Doc. No. 14 at 4.)

But where an action involves multiple claims, only one of which is subject to federal jurisdiction, the entire action, including the otherwise non-removable state-law claims, is removable as long as the state-law claims fall within a federal court's supplemental jurisdiction (what used to be called pendent jurisdiction and ancillary

---

[5](...continued)
not suggest that Smith's Statement was thus inadequate or deficient in its original state forum, only that such a pleading does not lend itself ideally to analysis under the well-pleaded complaint rule that governs original federal jurisdiction and removal.  But this is not to say that otherwise removable actions may not be removed simply because they originated in a state court limited to small claims.  *See Jefferson County, Alabama v. Acker*, 527 U.S. 423 (1999) (upholding removal from "small claims" court of Alabama).

[6]     Generally, the basis for federal jurisdiction must be gleaned from the face of the Complaint at the time of removal, not from any subsequent arguments following removal.  Here, however, Smith asserts the existence of the additional state-law claims in his memoranda supporting remand and then essentially fails to elaborate on the nature and basis of such claims.  The Statement of Claim, while apparently proper for Minnesota Conciliation Court, does not provide the usual basis for evaluating federal jurisdiction and arguably does not amount to a well-plead complaint.  Nevertheless, it remains the only *de facto* complaint in this action.  Thus the Court confines its jurisdictional analysis to the allegations of that pleading to determine whether they could support additional claims.

jurisdiction). *Williams v. Ragnone*, 147 F.3d 700, 703 (8th Cir. 1998) (noting that federal court would have supplemental jurisdiction under Section 1367 over the state-law claims that arose from same case or controversy underlying federal question claim); 28 U.S.C. § 1367(a).

Here it appears beyond question that the four state-law claims Smith now contends are included in his *de facto* Complaint arise from the same case or controversy giving rise to his federal claim, that is, the Union's handling of the insurance plan negotiations with Smith's employer. Thus even assuming that Smith's action includes the additional claims that he characterizes as arising under state law, there still is no basis for remand. Because it is clear that Smith has alleged at least a federal "fair representation" claim, and that such a claim is subject to federal jurisdiction, the entire action was properly removed to federal court and this Court has supplemental federal jurisdiction over the additional claims because they arise from the same case or controversy supporting the federal claim.

And in any event, those claims are subject to the doctrine of so-called "complete preemption" and thus independently removable as federal claims.[7] The four additional claims–"breach of contract, breach of trust, failure to process a grievance pursuant to the Union's labor agreement . . . [and] bad faith"–are simply variations on the basic fair-representation theme, albeit variations wrapped in the language of state-law claims.

---

[7] The unfortunately-named doctrine of "complete preemption" is actually a removal doctrine, not a defense based on the fact that federal law precludes a claim properly based on state law. For a thorough analysis of how complete-preemption removal differs from the affirmative defense of preemption, see *Visina v. Wedge Community Co-Op, Inc.*, 2007 WL 2908043 (D. Minn. Oct. 1, 2007).

The Supreme Court has explained that "as the exclusive bargaining representative of the employees" in a particular unit, a union has "a statutory duty fairly to represent all of those employees, both in its collective bargaining with" the employer, "and in its enforcement of the resulting collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). "Under this doctrine, the exclusive agent's statutory authority to represent all members of a designated unit includes a statutory obligation to serve the interests of all members without hostility or discrimination towards any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Id.*

Each of the four additional claims that Smith now alleges are based purely on state law are, in fact, plainly premised on Smith's complaints about how the union handled the negotiations with Smith's employer regarding benefit changes, that is, the sole nucleus of operative fact underlying the Statement of Claim Smith originally filed in conciliation court. Smith offers no real argument as to how the four additional claims could evade the scope of a federal fair representation claim. And this Court's independent analysis of his *de facto* Complaint reveals nothing that could support any conclusion to the contrary.[8]

Such claims, although alleged in the framework of state law, are subsumed under and completely preempted by the federal claim of fair representation derived from the

---

[8] As the Union contends, (1) the claim for failure to process a grievance "is plainly identical to a federal breach of the duty of fair representation claim," (2) the bad-faith claim "merely restates the legal standard for a federal fair representation claim," (3) the breach of trust claim likewise is "clearly the same as a federal fair representation claim because the only relationship of 'trust' between the parties is the union representation relationship," and finally (4) a breach of contract claim does not lie against the union but rather only the employer. (Doc. No. 11 at 19.)

National Labor Relations Act ("NLRA"). The Supreme Court originally recognized the doctrine of complete preemption–a jurisdictional doctrine permitting removal–in the context of Section 301 of the LMRA, 29 U.S.C. § 185. The Court ruled that where claims pled in terms of state law actually fall within the scope of Section 301–which governs certain claims between unions and employers–the complaint may be removed to federal court even though it does not facially disclose–as would be usually required under the well-pleaded complaint rule–any federal claim. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

But the duty of fair representation arises not from Section 301 of the LMRA, but rather from Section 9 of NLRA. *Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 563 (1990) ("The duty of fair representation is inferred from unions' exclusive authority under the National Labor Relations Act," 29 U.S.C. § 159(a), "to represent all employees in a bargaining unit."); *see Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1168 (5th Cir. 1989) (noting that "duty of fair representation claims are implied from sections 8(b) and 9(a) of the NLRA, 29 U.S.C. §§ 158(b), 159(a)"). A fair representation claim is plainly separate and different from a Section 301 claim. *United Steelworkers of America v. Rawson*, 495 U.S. 362, 373-74 (1990).[9]

---

[9]     Here, the Court notes that the Union frequently conflates separately-enacted labor laws. For example, the Union asserts that it removed this action because federal jurisdiction existed "over a claim of a breach of a union's duty of fair representation under the LMRA. 29 U.S.C. §§ 141, *et seq.*" (Doc. No. 1, ¶ 3.) But, of course, the fair representation claim arises under Section 9 of the NLRA, 29 U.S.C. § 159, and Section 301 of the LMRA is codified at 29 U.S.C. § 185. Moreover, although Smith's claims are directed only at the Union–the sole defendant here–the Union frequently cites cases

(continued...)

And complete preemption presents a question of whether the particular federal statute creates a cause of action that displaces certain state-law claims.  *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 394-96 & n.10 (1987) (explaining that even in context where doctrine of complete preemption originated there is no basis for removal of state-law claims based on individual employment contracts because Section 301 does not preempt any and all employment actions by unionized employees).  Accordingly, decisions recognizing removal of claims brought solely under Section 301 of LMRA do not thereby necessarily also dictate removal of fair representation claims under the NLRA.  *See id.* at 398 & n.12 (explaining that conventional defense of preemption under NLRA would not permit removal of claims not based on collective bargaining agreements under Section 301).

But those courts that have addressed the precise question at issue here have concluded that this narrow exception to the well-pleaded complaint rule also applies in this related area of federal labor law under the NLRA.  As the Fifth Circuit ably stated, there is no apparent basis to differentiate the preemption of fair representation claims under the NLRA's duty of fair representation from the complete preemption of claims under Section 301 of the LMRA:

---

[9](...continued)
primarily, if not exclusively, addressing claims against employers under Section 301 of the LMRA.  And most importantly for present purposes, the Union blurs together complete preemption under Section 301 of the LMRA with complete preemption under Section 9 of the NLRA.  (*E.g.*, Doc. No. 11 at 2-3 (contending state-law claims "must be dismissed as preempted by . . . Section 301").)

We hold that where the NLRA federal law duty of fair representation, actionable in federal court, preempts a state law claim, the suit asserting such a claim arises under section 1337 and may be removed to federal court just as the suit asserting state law claims preempted by section 301 of the NLRA may be removed under *Avco* and its progeny.

*Richardson v. United Steelworkers of America*, 864 F.2d 1162, 1169 (5th Cir. 1989).

*Accord BIW Deceived v. Local S6, Industrial Union o f Marine and Shipbuilding Workers of America,* 132 F.3d 824, 831-32 (1st Cir. 1997) (concluding that duty of fair representation "preemption operates in much the same fashion as section 301 preemption").[10]

Here, the four additional state-law claims that Smith now asserts are disclosed in his Statement of Claim would appear–based on the unusually minimal record at issue here–to be grounded in the same duties on which his federal fair representation claim is based, and thus completely preempted by federal law. The Conciliation Court Statement

---

[10]     Although the Eighth Circuit has not, to this Court's knowledge, expressly applied complete preemption to actions involving only fair representation claims under Section 9 of the NLRA, it has seemingly upheld the removal of actions that involved claims against unions (but not always fair-representation claims) as well as Section 301 claims against employers. *Schuver v. MidAmerican Engery Co.*, 154 F.3d 795, 798-99 (8th Cir. 1998) (upholding removal of employees' state-law claims against union and employer that were completely preempted by Section 301(a) of the LMRA); *St. John v. Int'l Assoc. Of Machinists and Aerospace Workers*, 139 F.3d 1214, 1217-19 & n.2 (8th Cir. 1998) (same). In each, the basis for removal was confined to Section 301. Even in *DeSantiago v. Laborers Int'l Uion of North America*, which involved claims by employees only against their union based on Sections 7 and 8 of the NLRA, the basis for removal was complete preemption under Section 301. 914 F.2d 125, 126-29 (8th Cir. 1990). In any event, the complete-preemption decisions from other federal circuits provide persuasive authority regarding the removability of fair-representation claims that purport to be based on state law. *See Chamernick v. United Steelworkers of American, Local 2660*, 2009 WL 1209467 (D. Minn. May 1, 2009) (relying on Fifth Circuit's decision in *Richardson*).

of Claim, which must serve as the *de facto* Complaint for purposes of evaluating federal jurisdiction and removal under the doctrine of complete preemption, discloses only allegations that the Union did not represent Smith fairly when negotiating and mediating with his employer the health insurance changes at issue.

In short, despite Smith's characterization of the additional claims as arising under state law, they are in fact subject to "complete preemption"–that is, they are actually federal claims that would be separately removable even if not accompanied by the federal fair-representation claim. Because there are no genuine state-law claims, there is nothing even potentially subject to the Court's discretionary authority to remand to state court.

### C.    There Is No Other Basis For Partial or Complete Remand, Under 28 U.S.C. § 1441(c), *Fielder v. Credit Acceptance Corp.*, Or Otherwise

Finally, Smith contends that "[w]ith the majority of the possible claims against the Union being State Court claims, this Court has discretion . . . to remand all matters in which state law predominates back to the State Court, or it may even remand the entire case, including the unresolved federal claim back to the State Court." (Doc. No. 14 at 4.) Smith argues that based on the facts of the present case, remand of the entire action is not just appropriate, but mandatory. (*Id.* at 6.) Smith bases his argument largely on 28 U.S.C. § 1441(c) and *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999).

Any such argument first assumes–contrary to this Court's conclusion–that the four additional claims he now asserts are not subject to complete-preemption removal and remain genuine state-law claims. But again, the Court need not support removal by relying exclusively on the doctrine of complete preemption. Even if the four additional

claims purportedly based on state law are not completely preempted so as to be separately removable (that is, even apart from the fact that they accompany the indisputable federal fair representation claim), there still would be no basis to remand them to state court, much less to remand the entire action.

First, there is no basis for this Court to sever and retain the fair representation claim while remanding the remaining state-law claims under 28 U.S.C. § 1441(c), which first authorizes the removal of otherwise non-removable state-law claims where they are joined with "a separate and independent" federal question claim, but then permits remand of "all matters in which State law predominates."

Here, however, the federal fair representation claim would not be a "separate and independent claim" joined with otherwise non-removable claims. At least on the present record, there is no dispute that at a bare minimum the four additional claims stem from the "same case or controversy under Article III" as does the fair representation claim, such that even if they are state-law claims, this Court would have supplemental jurisdiction over them under 28 U.S.C. § 1367(a). This conclusion would seem to necessarily preclude any finding that that federal claim could be "separate and independent" from the otherwise non-removable state-law claims. *See* 14B Charles Alan Wright, *et al., Federal Practice and Procedure* § 3722.3 (4th ed. 2009) (noting that "[t]he peculiarity of [Section 1441(c)] stems from its seeming inconsistency or, at least, lack of harmony[,] with Section 1367(a)"); *see also American Fire & Cas. Co. v. Finn*, 341 U.S. 6, 14 (1951) ("[W]here there is a single wrong to plaintiff, for which relief is sought,

arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c).").[11]

Rather, Smith supports his Section 1441(c) argument by contending remand is warranted under *Fielder v. Credit Acceptance Corp.*, 188 F.3d 1031 (8th Cir. 1999), which he claims "stands for the broad discretionary power which this court possesses on the question of remand." (Doc. No. 14 at 5.) But Smith's reliance on that unique decision is misplaced for several reasons.[12]

In *Fielder*, the court of appeals faced the unusual situation of a class action commenced in state court alleging that the defendant, an automotive financing company, engaged in two different types of financing overcharges. 188 F.3d at 1033. One type of allegedly-improper charges–the "official fee overcharge claims"–included a federal claim based on the Truth in Lending Act. The other type of allegedly-improper charges–the "interest overcharge claims"–were based entirely on state law. Based on the single federal claim, the entire action was properly removed to federal court, where the district

---

[11]    Although Smith invokes the remand authority of this Court under Section 1441(c), he does so cavalierly, ignoring the well-recognized problems raised by that provision, 14B Charles Alan Wright, *et al., Federal Practice and Procedure* § 3722.3 (4th ed. 2009) (noting the "tortured history" of that "unusual and complex provision"). Absent any serious engagement by Smith with that provision, this Court will not discuss it further.

[12]    Not the least of which is that while in *Fielder* the Eighth Circuit considered remand under Section 1441(c), ultimately it did "not reach" the question of whether its decision in *Williams v. Ragnone* "forecloses a § 1441(c) remand of an entire case prior to resolution of federal claims." 188 F.3d at 1038.

court then certified two separate classes, each based on one of the types of alleged overcharges.  *Id.*

The court of appeals first confronted a *Rooker-Feldman* issue based on the fact that the finance company already had sued–in state court–the car buyers who had defaulted on their payments and obtained judgments for any deficiency in the remaining loan obligation.  As one aspect of relief granted to the interest overcharge class, the federal district court issued plaintiffs an injunction requiring the finance company to seek modification of the existing state-court deficiency judgments.  The court of appeals concluded that "the *Rooker-Feldman* doctrine deprived the district court of jurisdiction to grant injunctive relief that effectively amended the state court deficiency judgements." *Id.* at 1036.

Moreover, the court of appeals thus recognized that its ruling left "the case in a jurisdictional quandary" because while those members of the class seeking relief from the state-court deficiency judgments "would be better off in state court," *Rooker-Feldman* does not deprive the federal court "of jurisdiction to afford the class other types of relief." *Id.*  The court also noted that the entire action had been removed based only–but properly–on "the Truth in Lending claim asserted by some of the official fee overcharge class."  *Id.*  But as the court of appeals observed, in contrast to that class "the interest overcharge class has asserted *no* federal question claims.  This class may remain in federal court only if the district court has supplemental jurisdiction over its claims."  *Id.* at 1036-37.  And because that class was permissive, the claims of each of the individual

members are "distinct cases and controversies," such that "each must separately support federal jurisdiction." *Id.* at 1037.

The court of appeals noted that one answer to that unusual "dilemma would be to remand the entire case to state court," but only if the federal Truth in Lending claims were dismissed. *Id.* (noting federal court's discretion to remand remaining state claims where federal claims dropped out of removed action). Absent any such early resolution of the federal claims, there was no discretion to remand the entire action. Accordingly, the court turned to Section 1441(c), governing the removal of actions involving a "separate and independent" claim subject to federal-question jurisdiction that is also accompanied by claims that would be non-removable on their own. It recognized that some courts had suggested that the current (post-1990 amendment) version of that provision might authorize the remand of the entire case, "*including unresolved federal claims*," if the state-law claims predominated. *Id.* at 1037 (emphasis in original). But the Eighth Circuit did not actually decide that question.

Rather, the court of appeals directed the district court to sever the two classes, thereby creating two independent actions, and to immediately remand the state-law interest overcharge class action, which was based solely on state-law claims that presented "novel, complex, and important issues of state law on which the [state] courts have given us little or no prior guidance." *Id.* at 1038-39. The other class could be retained in federal court because the "district court may afford complete relief to those members of the official fee overcharge class who have [federal] claims." *Id.*

This Court faces no such comparable jurisdictional "morass." *Id.* at 1038. Here, there is a single action between one plaintiff and one defendant involving a federal question claim and perhaps also additional claims that are at least subject to supplemental jurisdiction if they are not subject to removal under complete preemption and that do not present any *Rooker-Feldman* issues. In sum, even assuming the additional claims are not subject to complete preemption and thereby remain state-law claims, there is no other basis for partial, much less complete, remand under Section 1367(c), Section 1441(c), *Fielder*, or otherwise. Federal jurisdiction being proper, the Court turns to the adequacy of the *de facto* Complaint.

## II.    Dismissal Is Appropriate, But Without Prejudice

The Union also moves under Rule 12(b)(6) to dismiss this action, and to do so with prejudice, for failure to state a claim. (Doc. No. 11 at 3.) The Union largely argues that Smith has failed to allege sufficient facts to support a fair representation claim under the current pleading standard defined by *Twombly* and *Iqbal*. (*Id.* at 8-14.) Although the Union's motion is thus framed as one challenging the adequacy of the pleadings, its argument focuses substantially on the merits. (*Id.* at 11-18 (claiming that Smith cannot establish a breach of the duty of fair representation).) Thus it is perhaps not surprising that the Union seeks dismissal with prejudice.

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.

1986).  In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  *Id.* at 555.  As the United States Supreme Court recently reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]."  *Twombly*, 550 U.S. at 556.

While recent United States Supreme Court decisions addressing the Rule 12(b)(6) standard might have raised the pleading bar, there is no requirement that a plaintiff actually prove the merits of its case in its complaint.  Accordingly, contrary to the Union's arguments on the merits, there is no basis to dismiss the *de facto* Complaint with

prejudice.  Such a dismissal would be particularly unwarranted where the pleading was properly confined to minimal and informal allegations dictated by the standards governing proceedings in the particular state court forum before the action was removed.

Nevertheless, Smith's opposition to the Union's motion to dismiss is confined to the argument that the motion "is specious because there is no complaint," that is, because under Minnesota law its conciliation courts "should not be 'burdened with rules and traditions which are applicable to courts more formally convened.'" (Doc. No. 14 at 3-4.) Granted, the pleading removed to this Court originated in Minnesota Conciliation Court, which requires only a short statement of "what happened and when it happened."  (Doc. No. 1, Ex. 1.)

But now that the action is proceeding in federal court, the pleadings must conform with the applicable federal rules as interpreted by the federal courts.  *See Willy v. Coastal Corp.*, 503 U.S. 131, 134-35 (1992) (noting that under Rule 81(c), the federal rules "'apply to civil actions removed . . . from the state courts and govern procedure after removal'").  *See generally* 14C Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 3738 (4th ed. 2009) (noting settled rule that removed actions "will be governed by the Federal Rules of Civil Procedure and all other provisions of federal law relating to procedural matters").  Thus, while the Court will dismiss the Statement of Claim, it will do so without prejudice to Smith's right to amend and file a complaint that conforms with the applicable federal rules.  Moreover, in light of the issues addressed above regarding the complete preemption of claims articulated in terms of state law,

Smith must identify in any amended pleading he chooses to file the precise nature of his claim or claims, and whether any arise under state rather than federal law.

## CONCLUSION

The action was properly removed based on Smith having asserted at least a federal "fair representation" claim against his union. Even if the Court construes Smith's pleading to also assert various additional state-law claims, on the present record such claims are completely preempted by federal labor law as they merely attempt to re-package the federal claim in terms of state law. Accordingly, they too are independently removable. But even if the additional claims are not so completely preempted, the entire action may remain in federal court because supplemental jurisdiction would extend to the state-law claims. Finally, because the Statement of Claim originally filed in state conciliation court does not conform with the pleading requirements applicable in federal court, that pleading is dismissed without prejudice to Smith's right to file a complaint that conforms with federal law.

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.     Plaintiff's motion to remand (Doc. No. 8) is **DENIED**;

2.     Defendant's motion to dismiss (Doc. No. 2) is **GRANTED WITHOUT PREJUDICE** (to Smith's filing of an amended pleading within 30 days of this Order).

Dated:  January 12, 2010                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge